THOMAS J. GREEN et al., Appellants, v. ERNEST WORMAN, Respondent.

St. Louis Court of Appeals, March 13, 1900.

1. **Agent, Authority of.** The authority of an agent, in the absence of special instructions, must be determined by the nature of the business he is delegated to transact.

2. ———. In the case at bar the power to negotiate the sale of lands included all the usual and necessary means of executing the power.

3. Sale of Land: SELLER: DUTY OF. In the sale or exchange of a tract of land, it is usual and necessary that the seller point out to the prospective buyer the boundaries of the tract; that he exhibit the thing he offers for sale to the view and inspection of the prospective buyer.

4. ———: ———: FRAUD: DECEIT. Representations, though false, if innocent and made without any intention to defraud, and under the belief that they were true, furnishes no support to the allegation of fraud and deceit.

Appeal from the Douglas Circuit Court.—*Hon. William N. Evans*, Judge.

REVERSED AND REMANDED (*with instructions*).

*Thomas H. Musick* for appellants.

(1) That the court correctly declared the law for plaintiffs is supported by all the authorities. Destieger v. Hollington, 17 Mo. App. 382; Robinson v. Jarvis, 25 Mo. App. 421; Allen v. Fink, 75 Mo. 100; Nearer v. Bakewell, 110 Mo. 647; Anderson v. McPike, 86 Mo. 293. (2) But appellants insist that the finding of the court is wholly without evidence to support it. (3) All the evidence is set out in the abstract of the record, and it is insisted that not a word of evidence is there to be found sustaining the finding of fraudulent misrepresentations by plaintiffs. (4) Plaintiffs themselves made no representations whatever to defendant about the lines. They gave Newkirk no directions about making representations and made no approval of what he may have said.

*Burkhead & Clarke* for respondent.

(1) Defendant was deceived by the representation of plaintiff's agent, Newkirk; he trusted to them and bought on the strength of them. Having been taken by Newkirk to

the land and by Newkirk shown the lines and the fence inclosing the spring and land, which turns out to be on government land, taken together caused defendant to rely wholly on the statement of said Newkirk and to believe them to be true. 'Defendant knew nothing about the lines or that surrounding it, and had no way of ascertaining where the lines were except the statements of Newkirk. No opportunity was offered defendant to be informed as to where the lines run, had he doubted Newkirk's statement. The spring and line in question were within the inclosure. Newkirk's misrepresentation as to where the lines were, were calculated to impose on any man of ordinary prudence. Sanders v. McClintock, 46 Mo. App. 216. (2) The representation and assurance of Newkirk that the spring and land belonging to plaintiff, the same being within the inclosure, and the confidence defendant had in Newkirk, he being in a sense defendant's agent to trade off his (defendant's) place, induced defendant to act in the premises and purchase the land on faith of Newkirk's statement. (3) If Newkirk did not know where the lines were, he made defendant believe that he did and thus produced a false impression, and did so for the purpose of taking an undue advantage of defendant which constituted actual fraud in the fullest sense. Pomeroy v. Benton, 57 Mo. 531; Ridpath v. Lawrence, 42 Mo. App. 101; King v. Paint & Glass Co., 44 Mo. App. 111; Hamlin v. Abell, 120 Mo. 188; Hitchcock v. Boughan, 44 Mo. App. 42; Newman v. Able, 90 Mo. 666.

BLAND, P. J.—Plaintiffs owned the southeast quarter and southeast quarter of northeast quarter section 25, and north half of northeast quarter section 36, township 26, range 13, west, situated in Douglas county, Missouri, which was incumbered by a deed of trust for $1,000. The defendant owned a tract of land in Wright county, which was incumbered by a deed of trust for $2,400. F. W. Newkirk, a real

estate agent at Mountain Grove, was the agent of plaintiff with authority to sell for cash, or exchange plaintiffs' land for other lands. As such agent he induced the defendant to go with him to look at plaintiffs' lands, with a view of making an exchange of his own for plaintiffs. While looking over the lands Newkirk represented to defendant that a spring of water and five or six acres of bottom land, inclosed by a fence (inclosing a body of land in cultivation), was within the boundary lines of plaintiff's tract. After returning from this visit Newkirk brought plaintiffs and defendant together, who, after considerable negotiations extending over several weeks, finally agreed to exchange lands, on the following terms: Plaintiffs agreed to assume the payment of the $2,400 mortgage on defendant's tract and pay all taxes due on their tract; the defendant agreed to assume the payment of the deed of trust on plaintiffs' tract, to pay them $700 boot, and to pay taxes on his tract. On these terms they interchanged deeds of conveyances and defendant moved upon and took possession of the Douglas county tract. Defendant paid $276.60 of the $700 he agreed to pay as boot, paid some taxes that plaintiff should have paid, but failed and refused to pay the balance of the $700 boot money. To recover this balance plaintiffs brought this suit. As a defense the defendant set up several counterclaims, the principal one of which is as follows:

"Defendant further informs this court that he was unacquainted with the lines of said Douglas county place at the time he traded for it, that the lines had not been run out, to his knowledge, and he relied upon the statements of plaintiffs' agent, Newkirk, who was at the time agent for plaintiffs, as to such boundaries. That said Newkirk took defendant to the lands in Douglas county, and showed it to him (this defendant) and showed him the boundary lines, and especially the line near a large spring of water, which was the only source of water supply on the farm, and showed

defendant and represented to defendant that said spring was on the lands defendant was to get of plaintiffs, and this defendant believed said statement, and was induced thereby to make said trade. That since this defendant made said trade and paid said $276.60 on his said $700 indebtedness to plaintiffs, and the said $55 taxes and costs as aforesaid the lines have been surveyed and said spring, and about four acres of rich bottom lands represented as aforesaid to belong to said tract of lands, belong to and are the property of the government, now taken up under the homestead laws of the United States, and this defendant, by reason of said false representations of said Newkirk, agent of plaintiffs as aforesaid, has been damaged in the sum of six hundred dollars. And by reason of the failure of plaintiffs to pay the taxes on said land, as per their agreement, defendant has been damaged in the sum of fifty-five dollars. Defendant therefore asks that damages in the sum of six hundred and fifty-five dollars be awarded defendant, and that he have his costs so unjustly laid out and expended, and for such other further and general relief as to equity seems proper."

The uncontradicted evidence is that Newkirk showed defendant the spring and some of the boundary lines and told him that the spring was on the land. The evidence is also that the spring and several acres of bottom lands (enclosed by a fence when defendant went with Newkirk to look at the land), did not belong to the tract, but was at the time government land, and had been taken by a homestead entry, after the trade between plaintiffs and defendant was made. The evidence is also that plaintiffs at no time gave Newkirk as their agent a description of the land, or made any representations to him, with reference to the location of the spring, or gave him any express authority to make any representations as to the boundaries of the land, or location of the spring; nor does it appear that Newkirk knew the boundaries of the land, or whether or not the spring was on

the tract. He swore that he supposed it was on the tract, because it was enclosed by the fence enclosing the lands in cultivation on the tract. The evidence is that the loss of the spring and the four or five acres of bottom lands, damaged the value of the farm from $50 to $600.

The issues were submitted to the court who made the following finding of facts, and rendered the following judgment: "The court, after being fully advised in the premises, finds that in the transaction or trade between plaintiffs and defendant, defendant agreed to pay plaintiffs the sum of seven hundred dollars as a difference in value of farms, and that defendant had, before the institution of this suit, paid part of said $700 leaving a balance, including interest from date of demand, the sum of four hundred and fifty dollars, and that the same was for a part of the purchase money of the following described lands in Douglas county, Mo., viz.: S. E. qr. and S. E. 1-4 N. E. qr. sec. 25, and N. 1-2 N. E. qr. sec. 36, all in township 26, range 13.

"And the court also finds that the plaintiffs fraudulently misrepresented the true lines of the above lands in such trade, and that he is damaged thereby in the sum of four hundred and fifty dollars.

"It is therefore considered and adjudged by the court that plaintiffs take nothing by reason of this action, and that they pay the costs herein and that execution issue therefor."

After an unavailing motion for a new trial, plaintiffs appealed.

There is not a line of testimony in the record that the plaintiffs personally made any representations whatever to defendant about the spring or its situation, or about the boundary lines of the land; nor is there a particle of testimony that they expressly authorized Newkirk their agent to make any representations as to the boundaries of the land, or the location of the spring. Unless, therefore, the repre-

sentations made to defendant as to these matters were within the scope of Newkirk's authority as agent to negotiate a sale or exchange of the lands, the finding of the circuit court "that plaintiffs fraudulently misrepresented the true lines of the lands, and that defendant was damaged thereby," is unsupported by any evidence. The authority of an agent, in the absence of special instructions, must be determined by the nature of the business he is delegated to transact. Gentry v. Ins. Co., 15 Mo. App. 215; Breckenridge v. Ins. Co., 87 Mo. 62. Newkirk was clothed with power to negotiate a sale or exchange of the lands, and no restrictions were imposed upon him so far as the evidence discloses. The power to negotiate the sale of the lands, include all the usual and necessary means of executing the power. Samuel v. Bartee, 53 Mo. App. 587; State ex rel. v. Gates, 67 Mo. 139.

In the sale or exchange of a tract of land, it is usual and necessary that the seller point out to the prospective buyer the boundaries of the tract; that he exhibit the thing he offers for sale to the view and inspection of the prospective buyer. Newkirk undertook to do this very thing, and in doing so he represented that the spring and the four or five acres of bottom lands were inside the boundary lines and belonged to the tract. Plaintiffs are bound by these representations. Morse v. Rathburn, 49 Mo. 91. Defendant relied upon these representations believing them to be true, and after seeing the land as it was shown him, made the exchange. These representations turned out to be untrue; they were false in fact, and the court found that they were fraudulent as well. The evidence to support the finding that they were fraudulent, is that Newkirk made them without knowing them to be true, and on belief of their truth only, and that defendant acted upon them believing them to be true. These facts show such fraud in equity as would authorize a court to cancel the trade and set aside the con-

veyance of defendant to plaintiffs on proper terms, but it is not sufficient to prove fraud in law; to have done this, the defendant should have gone farther, and adduced evidence showing or tending to show that Newkirk knew that the representations he made as to boundary lines and spring were false, or that he made the representations as of his own knowledge, but did not know whether they were true or false, and that plaintiff relied on them believing them to be true. Hamlin v. Abell, 120 Mo. loc. cit. 201; Nauman v. Oberle, 90 Mo. 666; Ownes v. Rector, 44 Mo. 389; McBeth v. Craddock, 28 Mo. App. 380; Walsh v. Morse, 80 Mo. 568. The representations though false, if innocent and were made without any intention to defraud, and under the belief that they were true, furnishes no support to the allegation of fraud and deceit. Walsh v. Morse, *supra*; Dulaney et al. v. Rogers et al., 64 Mo. loc. cit. 203; Joliffe v. Collins, 21 Mo. 338; Newkirk and plaintiff both testified that the spring and four acres were inside the fence enclosing the farm, and Newkirk testified that no one had ever pointed out the boundaries of the tract to him, and that he did not know their location; that he had been told the spring was on the tract, and seeing it enclosed by the fence enclosing the farm he believed it to be on the tract. There is no evidence tending to contradict this statement, and the physical fact that the spring was inside of the farm fence strongly corroborates Newkirk's statement, which if true, exclude every inference of deceit or intentional fraud, and proves to a reasonable certainty that Newkirk made an honest mistake, such an one as might support an equitable defense, but will not support the legal defense of fraud and deceit as found by the court, for which reason we conclude that the judgment of the court is without evidence in its support, and reverse it and remand the cause with leave to defendant to file an equitable answer if he is so advised.

Judge *Bond* concurs; Judge *Biggs* dissents on the ground that in his opinion the scienter was sufficiently proven under the ruling in Dunn v. White, 63 Mo. loc. cit. 185; Dulaney v. Rogers, 64 Mo. loc. cit. 203; and Walsh v. Morse, 80 Mo. 568.