HENRY J. B. ROSE, Appellant, v. ECLIPSE CARBONAT-
ING COMPANY *et al.*, Respondents.

St. Louis Court of Appeals, December 4, 1894.

1. **Corporations**: COMPENSATION OF DIRECTORS. While the directors
of a corporation may employ one of their number to perform services
for the corporation which are not necessarily incidental to his duties
as director, he will not be entitled to compensation therefor, unless it
is fixed by corporate action before the rendition of the services.

2. **Contracts**: CONSTRUCTION BY PARTIES. The construction placed
upon a contract by the parties thereto will prevail, if the contract
will admit thereof.

3. **Contract**: CONSTRUCTION BY PARTIES. If a writing admits of the
construction placed upon it by the parties to it, that construction
will prevail.

4. **Termination of the Contract for Services from Month to
Month.** A contract for services from month to month may be ter-
minated by either party at the expiration of any month.

*Appeal from the St. Louis City Circuit Court.*—HON.
JACOB KLEIN, Judge.

AFFIRMED.

*E. T. Farish* for appellant.

*Frank K. Ryan* for respondents.

ROMBAUER, P. J.—The Eclipse Carbonating Com-
pany is a corporation whose affairs were managed by
a board of three directors, consisting of the plaintiff
and of the defendants Dolph and Judge, who at the
same time were the stockholders of the corporation.
Controversies arose between the plaintiff and the
defendants as to the management of the affairs of the
corporation, and the plaintiff applied for the appoint-
ment of a receiver. The circuit court, on September
22, 1893, appointed a receiver, who duly qualified on

September 28. The effects of the corporation were sold under the order of the court, and the cause was sent to a referee to take an account of the respective interests of the plaintiff and defendants in the fund realized by the sale. To the report made by the referee, both the plaintiff and defendants excepted. The court overruled the plaintiff's exceptions, to which action of the court the plaintiff did not except. The court sustained the exceptions of the defendants, and made its own judgment on the referee's report, and to this action of the court the plaintiff excepted, and brings his exceptions to this court by the present appeal.

While the plaintiff's exceptions related to several matters, the only one presented by the plaintiff for our consideration is the action of the trial court in so modifying the referee's findings as to allow the plaintiff compensation for his services as manager, only to April 30, 1893, instead of September 23, 1893, when he ceased to be manager in point of fact. The plaintiff contends that, upon the law applicable to the weight of the evidence, he was entitled to a compensation at the rate of $1,500 per annum to the last named date.

The evidence bearing upon this question is as follows: January 30, 1890, the board of directors met, all three being present, and the following resolution was adopted unanimously:

"That the board engage Mr. H. J. B. Rose as manager for one year, with the following conditions and understanding; It is a mutual understanding and agreement that Mr. H. J. B. Rose is to be manager of the company's business, and that Mr. Rose agrees to be fully satisfied under any and all circumstances with the sum of $1,500 for his salary for his services to the company during the first fiscal year;

that the payment of this salary shall depend upon the business during the year being fairly profitable, and shall be in the discretion of the board of directors. *It is further agreed that the salary of the said H. J. B. Rose shall not be less than fifteen hundred dollars per year after the first fiscal year, but may be increased by the board of directors.*" (The italics are our own.)

The plaintiff contends that the effect of the resolution was his engagement as manager of the corporation for years succeeding the first year at a minimum salary of $1,500 per annum, and was in the nature of a continuing contract, which the other directors could not impair without his consent. The defendants, on the other hand, contend that the resolution merely contemplated a continuing employment for periods after the expiration of the first year at a minimum salary at the rate of $1,500, until the board of directors should otherwise provide, and contemplated a fixing of the compensation of the said Rose as manager at the beginning of each fiscal year.

What construction the directors themselves put upon the resolution is best evidenced by their subsequent action. The board met in January, 1891, when a resolution was unanimously adopted that Rose be engaged as manager of the business for the ensuing year at a salary of $1,500 per annum, payable annually. The board again met in January, 1892, when a resolution was adopted that Rose be engaged at a salary of $1,500, payable monthly, and that it be further provided that an additional payment of $500 be made to him as extra salary, in case the net profits of the business for this year should exceed $5,000. The net profits of the business for that year did not exceed $5,000.

Nothing further was done touching an engagement of a manager until April 10, 1893, when the

board passed the following resolution: "That the president of this company (Rose) be instructed to make endeavors to secure a proper manager for the business of this company, not to exceed $166.66 per month, and report at next meeting. No report was made by the president at the next meeting, whereupon the two defendants, composing a majority of the board, on May 3, 1893, passed a resolution to the effect that the office of manager was vacant, but that, nevertheless, in consideration of the fact that Mr. Rose, as president, has executed the essential duties as manager, do hereby authorize the payment to him of salary as manager at the same rate as last year, i. e., $125 per month, for the term beginning January 1, 1893, and ending April 30, 1893, upon his receipt in full for services."

At a subsequent meeting held May 18, 1893, the president (Rose) reported that his efforts to engage a suitable manager at $2,000 per annum had so far been unsuccessful; that he was himself an applicant, but required $3,000 per annum. No action was taken on this suggestion. On May 19 Rose submitted a proposition to his codirectors to continue as manager himself at a salary of $250 per month, and no action of any kind was taken by them on that suggestion. He thereupon under date of May 23, 1893, sent to them the following letter:

"I hereby notify you that I have employed H. J. B. Rose as manager for the current year at a salary of $250 per month. Hoping that this will meet with your approval, I am,

"Very respectfully,

"H. J. B. Rose, President."

The plaintiff Rose continued to act as president and manager of the corporation until the same went into the hands of a receiver, which, as above seen, was September 23, 1893.

These being the uncontroverted facts, we must conclude that the trial court did not err in holding that Rose was not entitled to compensation as manager for the period intervening between April 30 and September 23, 1893.

We decided in *Bennett v. Car Roofing Co.*, 19 Mo. App. 349, that, while directors may employ one of their number to perform services for the corporation, which are not necessarily incident to his duties as director, yet his compensation should be fixed by corporate action before the services are actually rendered, so as to contain the necessary elements of a contract supported by a sufficient consideration. This view was reaffirmed by us in *Besch v. Western Carriage Co.*, 36 Mo. App. 336, and also by the supreme court in *Ward v. Davidson*, 89 Mo. 454, and must be considered as the settled law of this state, whatever view may be entertained on the subject by some courts in some other jurisdictions. The plaintiff contends that, conceding such to be the law, yet, as the resolution of the board of January 30, 1890, *supra*, has never been abrogated, he had a right to assume that his compensation was to be at least $1,500 per annum until his employment was terminated in some lawful manner, and hence he was justified in performing services as manager with that understanding after April 30, 1893.

The vice of the argument is this: It appears that both plaintiff and defendants construed the meaning of the resolution of January 30, 1890, as contemplating the employment of the plaintiff for a definite period, which appears by the board passing an independent resolution fixing the manager's salary at the beginning of each succeeding year. As the resolution of January 30, 1890, certainly admitted of the construction that such action of the board was essential to a valid employment in succeeding years, the construc-

tion put upon the resolution by the parties themselves must prevail. *St. Louis Gaslight Co. v. City of St. Louis*, 46 Mo. 121; *Mathews v. Danahy*, 26 Mo. App. 660; *Belch v. Miller*, 32 Mo. App. 387. Now, it will be seen that, while the board did employ Rose as manager at the beginning of each succeeding year after 1890 by resolution fixing both the duration of employment, and terms of compensation, they failed to do so in the beginning of 1893 owing to the fact that amount of compensation could not be agreed upon between the parties. Rose, however, continued to act as manager with the full consent of the board until April 30, 1893, and, no other terms being fixed, it must be assumed that he did so under the resolution of January, 1892, which fixed his compensation at $1,500 per annum, payable in monthly installments. This was at best an employment from month to month in the year 1893, and not being one for a definite period could be terminated by the board at the expiration of any month. *Boogher v. Life Ins. Co.*, 8 Mo. App. 533. That it was terminated by the resolution of the board of May 3, 1893, *supra*, can admit of no reasonable doubt. It can not be said that the corporation accepted the services of Rose as manager after that date, and therefore, *ex æquo et bono*, ought to pay for them. Rose simply continued to act as president and manager after that date without any corporate action continuing him as manager, and, as far as the record shows, without even the consent of his codirectors that he should act as such manager, and hence his services under the rule of law above stated must be considered as having been rendered gratuitously and without an antecedent contract with the corporation entitling him to compensation therefor.

It results from the foregoing that the judgment of the trial court must be affirmed. All the judges concurring it is affirmed.